UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOMINGOS NOBREGA, | : | CIVIL ACTION NO. 3:CV-14-2027 |
| | : | |
| Petitioner | : | (Judge Nealon) |
| | : | |
| v. | : | |
| | : | |
| DAVID J. EBBERT, et al., | : | |
| Respondents | : | |

## MEMORANDUM

Domingos Nobrega, an inmate currently confined in the United States Penitentiary, Yazoo City, Mississippi, filed this *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Petitioner claims that his due process rights were violated during the course of a prison disciplinary hearing held on April 10, 2014, at Canaan United States Penitentiary ("USP-Canaan"), Waymart, Pennsylvania, when he was found guilty of the prohibited act of Possession of any Narcotic, Marijuana, Drugs, Alcohol, Intoxicants or Related Paraphernalia not Prescribed for the Individual by Medical Staff, a violation of Disciplinary Code Section 113.  Specifically, he claims "that the purple liquid recovered had not ever been tested by a Toxicologist." (Doc. 1, petition).  For relief, Petitioner seeks the expungement of the incident report and sanction, and restoration of his forfeited good conduct time. Id.  The petition is ripe for disposition and, for the reasons that

follow, will be denied.

**Background**

On March 19, 2014, Petitioner was served with Incident Report No. 2561034 charging him with "Introduction or Making of any Narcotic, Marijuana, Drugs, Alcohol, Intoxicants or Related Paraphernalia not Prescribed for the Individual by Medical Staff", a Code 111 violation. (Doc. 5-1, Ex. C, Incident Report). The incident report, which was written by M. McColligan, reads as follows:

> On March 19, 2014, at 12:50 p.m., I was conducting a routine random cell search of cell 221 in unit F-1 which is occupied by Inmate Nobrega (06915-036) and another inmate. While searching the upper locker, belonging to inmate Nobrega 06915-036, I found a soda bottle containing a dark purple liquid in it. When tested by the unit flashlight (passive alcohol screening serial number 0215 102295), it registered as containing alcohol. Inmate Nobrega admitted that it belonged to him and claimed that it was for a religious service. I confiscated the bottle and notified compound officers. Compound Officer Everitt took the substance to the lieutenant's office and tested it with Alcosensor 3 serial number 1222816. It had a positive reading of .105.

Id. On March 20, 2014, Petitioner appeared before the Unit Discipline Committee ("UDC"). (See Id., Committee Action). The UDC referred the charge to the Discipline Hearing Officer ("DHO"). Id. During the UDC hearing, staff member, D. Palmer, informed Nobrega of his rights at the DHO hearing and provided him with a

2

copy of the "Inmate Rights at Discipline Hearing" form. (Id. at 56, Inmate Rights at Discipline Hearing).

Also on March 20, 2014, Nobrega was provided with a "Notice of Discipline Hearing before the (DHO)" form. (Id. at 59). Nobrega requested staff representatives, Senior Officer Specialists Everitt and Alogna. Id. He also requested three inmate witnesses, Lawrence Johnson, Shawn Peterkin, and Jamalda Redish. Id.

On April 10, 2014, Petitioner appeared for a hearing before DHO, Marc A. Renda. (Doc. 5-1, Ex. D, DHO Report). During the DHO hearing, Petitioner was again read his rights, and he indicated that he understood them. Id. The DHO confirmed that Nobrega received a copy of the incident report. Id. The DHO denied Nobrega's request for Senior Officer Specialists Alogna and Everitt to be his staff representative because they were significantly involved in the March 19, 2014 incident. Id. Nobrega elected to proceed with his disciplinary hearing with Lieutenant Rosler as a staff representative. Id. Staff representative, W. Rosler, Lt., noted no discrepancies in the discipline process and was disclosed all documentation in reference to Petitioner's case. Id. Further, he met with Nobrega in advance of the hearing to discuss the case. Id. He stated for the record "Whether or not intent was

3

there, he possessed a substance which tested positive for intoxicants." Id.

Additionally, DHO Renda permitted Nobrega a continuation to present three character witnesses. Id. Inmates Johnson and Peterkin both asserted that Nobrega was Jewish and had the bottle containing the intoxicants in his possession. Id. They each asserted he initially obtained this bottle through his religious practices. Id. While both inmates believed Nobrega would not get involved with intoxicants, each independently acknowledged Nobrega's possession of the bottle containing the contents that tested positive for alcohol on March 19, 2014. Id.

Nobrega's final character witness was not housed at USP-Canaan on the date of his disciplinary hearing and, as such, he was not called as a witness. Id. Moreover, as DHO Renda noted, inmate Redish was only being called as character witness, and therefore, his testimony wasn't necessary. Id.

Petitioner offered the following statement on his behalf:

> "We're here because of procuring actual illegal contraband. There was no intent to make it illegal. The defendant was practicing his religion. He got the juice in that bottle on that Saturday after religious practices. After Saturday, the bottle was left in the cell until the next Saturday, the 19th. The defendant harbored grape juice because they are not giving religious services to the Jewish nation on Saturday which is our Shabbat. They're not letting us eat our meals in front of candles. We have to have grape juice."

When further interrogatories were posed by the DHO the manner in which religious services purportedly provided him grape juice, he replied: "There was a grape juice box Lt. Rosler was given to him by Officer Everitt. I don't remember the date on the box." When questioned regarding the liquid substance in the soda bottle as depicted in photographic evidence, NOBREGA responded "I had a bottle and had an empty box of grape juice. Yes, that was my bottle. It was less than an ounce", and stated "I asked them to do a proper toxicology test." NOBREGA also testified "If you stick anything in a bottle it can accidently turn bad," acknowledged being provided grape juice in a box not a soda bottle, and sated "We're supposed to consume it [grape juice] Friday, Saturday and Sunday. No, they don't give it to us to hold."

Lastly, NOBREGA admitted stating to the investigator "Exempt from levee except as value, returned as a contract for settlement. Contract due upon signature of agent, value $1000.00". When questioned about the significance of said statement he stated "They were short-handing me" and when questioned about the reference to "Contract due upon signature of agent value $1000.00", he replied "It had to do with a contract when you got a name, you have to use capital letters."

No procedural issues were cited. Documentary evidence was provided for consideration to the DHO. Specifically, NOBREGA adduced from "The Aleph Institute", "Institution Handbook of Jewish Practice and Procedure", pages 4-1, 4-2, 4-3 and 4-5; and a hand written statement. In part he requested "Charictor Witness", cited "Tools of Truth Finding", and "Evidence Needed". He requested 20cc of "Sodiumpenthenol", "Polygraph Tester", and the "grape juice box that was given to Lt. W. Rosler on 3-19-2014, that showed the juice was given to the defendant bad or out of date (i.e. left in the defendant's possession after a shakedown as a bad product in February). This will show that this is a miscarriage of justice and plain error also a hayness charge."

5

Id.

In addition to the Incident Report and Investigation, the DHO considered the following documentary evidence in making his determination: (1) a photograph depicting plastic soda bottle; (2) liquid substance and Alco-Sensor III reading of .105; and (3) Memorandum dated March 19, 2014 from A. Everitt, Senior Officer Specialist. Id. The specific evidence taken from the relied upon documentary evidence was as follows:

> The DHO finds based on the greater weight of the evidence that on March 19, 2014, at approximately 12:50 PM, while the reporting staff member was conducting a search of cell 221 assigned to NOBREGA in the F1 housing unit, he discovered a soda bottle in the top locker containing a dark liquid substance, which subsequently yielded a positive reading of ".105" with the Alco-Sensor III.
>
> Specific evidence relief on to support this finding is the account of the reporting staff member, as reflected in the incident report. He indicates "At the above date and time (3-19-2014 at 12:50 PM), I was conducting a routine random cell search of cell 221 in unit F-1 which is occupied by Inmate Nobrega [NOBREGA] (06915-036) and another inmate. While searching the upper locker, belonging to inmate Nobrega [NOBREGA] 06915-036, I found a soda bottle containing a dark purple liquid in it. When tested by the unit flashlight (passive alcohol screening serial number 0215 102295), it registered as containing alcohol. Inmate Nobrega [NOBREGA] admitted that it belonged to him and claimed that it was for a religious service. I confiscated the bottle and notified compound officers. Compound Officer Everitt took the substance to the

lieutenant's office and tested it with the Alcosensor 3 serial number 1222816. It had a positive reading of .105".

The DHO also relied upon one (1) photograph depicting plastic soda bottle, liquid substance and Alco-Sensor III reading of .105; as well as a memorandum dated March 19, 2014 from A. Everitt, Senior Officer Specialist, which cites in pertinent part on the date of the incident while working as the compound #1 officer, he was asked by the F1 officer to stop by the unit, the reporting staff member informed him she located a soda bottle with a substance inside that registered on her Alco-Sensor flashlight, the bottle was found secured in NOBREGA's wall locker, he admitted the bottle belonged to him, he then transported the bottle and the inmate to the lieutenant's office where he tested the substance with the Alco-Sensor III, and obtained a positive reading of ".105".

The DHO considered and affords little weight to NOBREGA's plea "We're here because of procuring actual illegal contraband. There was no intent to make it illegal. The defendant was practicing his religion. He got the juice in that bottle on that Saturday after religious practices. After Saturday the bottle was left in the cell until the next Saturday, the 19th. The defendant harbored grape juice because they are not giving religious services to the Jewish nation on Saturday which is our Shabbat. They're not letting us eat our meals in front of candles. We have to have grape juice.", and when further interrogatories were posed by the DHO the manner in which religious services purportedly provided him grape juice, he replied "There was a grape juice box Lt. Rosler was given to him by Officer Everitt. I don't remember the date on the box," when questioned regarding the liquid substance in the soda bottle as depicted in photographic evidence, NOBREGA responded "I had a bottle and had an empty box of grape juice. Yes, that was my bottle. It was less than an ounce", and stated "I asked them to do a proper toxicology test." NOBREGA also testified "If you stick anything in a bottle it can accidently turn bad," acknowledged being provided

7

grape juice in a box not a soda bottle, and sated "We're supposed to consume it [grape juice] Friday, Saturday and Sunday. No, they don't give it to us to hold." The DHO also considered his written statement and witness testimony of JOHNSON, LAWRENCE 06586-084 and PETERKIN, SHAWN 57697-054. The DHO finds his plea fails to exculpate him of the charge.

The hearing officer will address NOBREGA's argument "in toto". First, and specific to his request for a "polygraph tester" and "20 cc of sodiumpenthenol" [Sodium Penthanol], these are not agency nor statutory "*sin qua non'*s", and as such the hearing officer will reject this request. The actual grape juice box to "Show the best date on the box, what will show if the juice given to the defendant bad or out of date" is equally nugatory. Not a scintilla of evidence, other than NOBREGA's self-admittance, the derivation of the substance was from grape juice provided by religious services. NOBREGA testified he "didn't remember the date of the box". Therefore, the fact the substance was grape juice, was "bad" or was even "out of date" is speculative at best.

NOBREGA argued he "got the juice in the bottle on that Saturday after religious practices. After Saturday the bottle was left in the cell until the next Saturday, the 19th. The Defendant harbored grape juice because they are not giving religious services to the Jewish nation on Saturday which is our Shabbat. They're not letting us eat our meals in front of candles. We have to have grape juice." The hearing officer need not enter the territory of whether he is being deprived of the opportunity to pursue his religious beliefs and practices. The essential threshold is the issue whether NOBREGA possessed the intoxicant.

Even if his religious practices were being impeded, there are other viable avenues available for complaint and problem resolution other than "harboring" grape juice (i.e. administrative remedy complaint process, Inmate Request to Staff Member, and voicing ones

8

concerns to executive or supervisory staff).  Moreover, the purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement.  These procedures are available by which inmates will be able to have any issue related to their incarceration formally reviewed by high-level Bureau officials.

NOBREGA also argued "I asked them to do a proper toxicology test".  A review of the facts and evidence presented in this case the substance was tested in accord with agency policy and procedure, which far-exceeded agency established threshold levels, and this basis fails to warrant expunction of the charge.

Lastly, NOBREGA argued "If you stick anything in a bottle it can accidentally turn bad," an argument of which the hearing officer finds preposterous and contrary to reason.  Making a tremendous leap and giving merit to the argument the substance was grape juice which "turned bad", the DHO does not believe it would evolve into an intoxicant without adulteration, or metabolic process of converting sugar to acids, gases and/or alcohol using yeast or bacteria.  Fermentation is the decomposition of foodstuffs generally accompanied by the evolution of gas.  Alcoholic fermentation is when sugar is converted into alcohol and carbon dioxide.  During this process organic matter is decomposed in the absence of air (oxygen); hence, there is always an accumulation of reduction products, or incomplete oxidation products.

All inmates are responsible for all property and contraband in their possession, dominion and that of which they exercise control.  The bottle containing a substance which yielded a positive test for intoxicant, was discovered in NOBREGA's locker, and as such the hearing officer will sustain the charge.

The DHO considered all evidence and has drawn the conclusion based on the greater weight of the evidence the prohibited act of

> Possession of any Narcotics, Marijuana, Drugs, Alcohol, Intoxicants, or Related Paraphernalia Not Prescribed for the Individual by the Medical Staff, Code 113, was committed. The charges were amended from the equivalent series charge of Introduction or Making of any Narcotics, Marijuana, Drugs, Alcohol, Intoxicant, or Related Paraphernalia, not Prescribed for the Individual by Medical Staff (Code 111), as the elements of his actions most satisfies that of Code 113.

Id. The DHO sanctioned Petitioner to disallowance of forty (40) days good conduct time; forfeiture of non-vested good conduct time forty (40) days; sixty (60) days disciplinary segregation, expiring 6/10/2014; ten (10) months loss of commissary privileges, concluding on 2/10/2015; ten (10) months loss of TRULINCS privileges, expiring 2/10/2015; ten (10) months loss of telephone privileges, concluding on 2/10/2015; and loss of other privileges- two (2) months impound property, excluding religious and legal material. Id. The DHO documented his reasons for the sanctions given as follows:

> Use of intoxicants in a correctional setting may create a disruption of the facility and jeopardize the safety of staff an inmates. Intoxicated inmates have proven in the past to be assaultive to both staff an inmates, creating an unsafe environment. Consumption of alcohol impairs ones mental and physical faculties. Intoxication results in a temporary experience of a wide range of emotion, ranging from anger, sadness and depression to euphoria, lightheartedness and joviality. Behavior of this nature is egregious and cannot be permitted.

> The sanctions imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his behavior.
>
> Disciplinary segregation, forfeiture of non-vested good conduct time, and the disallowance of good conduct time were imposed to demonstrate the seriousness of his actions and as punishment for his conduct. The loss of commissary, TRULINCS, and telephone privileges, as well as impounding of property, was imposed to deter further behavior. It is hoped that these sanctions prompt NOBREGA to modify his behavior and deter others from engaging in such activities in the future.

Id. Nobrega was advised of his appeal rights at the conclusion of the hearing. Id.

**Discussion**

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. Torres v. Fauver, 292 F.3d 141 (3d Cir.2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. Id. Since Petitioner's sanctions did include the loss of good conduct time, Petitioner has identified a liberty interest in this matter.

11

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445-46 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir.1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457.

Nobrega's disciplinary hearing was held in April 2014. The applicable Bureau of Prisons' inmate disciplinary procedures for this time frame are codified at

28 C.F.R. § 541.1, et seq., and entitled, Inmate Discipline and Special Housing Units. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. See Von Kahl v. Brennan, 855 F.Supp. 1413, 1418 (M.D.Pa.1994). Pursuant to the 2014 regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.14. The incident is then referred to the UDC for an initial hearing pursuant to § 541.15. The UDC hearing is "ordinarily held within three work days from the time staff became aware of the inmate's involvement in the incident" and does not include the initial day staff learns of the incident, weekends or holidays. See 28 C.F.R. § 541.15(b). This period may be extended for good cause shown by either the inmate or staff. See 28 C.F.R. § 541.15 (k). If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for a hearing. 28 C.F.R. § 541.15. "The DHO shall give the inmate a written copy of the decisions and disposition, ordinarily within 10 days of the DHO's decision." 28 C.F.R. § 541.17(g).

In the instant case it is clear that Nobrega was afforded all of the required procedural rights set forth in Wolff.  He received timely notice of the incident report. He was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf.  Although Nobrega initially requested Senior Officer Specialists Everitt and Alogna as his staff representative at his April 10, 2014 disciplinary hearing, this request for these particular staff representatives was denied because of their personal involvement with the incident at issue. Nobrega, however, was provided and did agree to have Lieutenant Rosler substituted as his staff representative. DHO Renda noted that Nobrega consented to the substitution of the staff representative and, as such, there is no basis to find any due process violation.  See Von Kahl v. Brennan, 855 F. Supp. 1413, 1421 (M.D. Pa. 1994) (finding in a federal inmate disciplinary proceeding "where the minimal requirements of due process have been met, an inmate must show prejudice to the rights sought to be protected by the regulation claimed to be violated" in order to obtain habeas relief)

To the extent that Petitioner argues that the contents of the confiscated bottle were not sufficiently verified as intoxicants. DHO Renda relied upon the testing performed by the staff members at USP-Canaan following the confiscation of the

liquid to sanction Nobrega. At the disciplinary hearing, the staff members involved in the testing of the liquid testified that the analysis was performed in accordance with established agency policy and procedures. This evidence clearly indicated that the bottle confiscated from Nobrega's locker contained alcohol. A review of the record also reveals that the equipment used to test the liquid was appropriately calibrated in accordance with established institutional guidelines, set forth at BOP Policy Statement § 6590.07, Alcohol Surveillance and Testing Program. Thus, there is no support for Nobrega's allegation that the bottle confiscated from Nobrega did not contain alcohol.

Since Nobrega was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the decision by the DHO. The record clearly reveals the existence of specific documentary evidence submitted at the hearing to allow the DHO to conclude that the greater weight of the evidence supported a finding of guilt. Specifically, the DHO relied upon the following: (1) a photograph depicting soda bottle; (2) liquid substance and Alco-Sensor III reading of .105; and (3) Memorandum dated March 19, 2014 from A. Everitt, Senior Officer Specialist. Based on the foregoing, the Court concludes that the evidence before the DHO was sufficient to support the outcome of the hearing and meets the

requirements imposed by the Due Process Clause.

To the extent that Petitioner argues that the DHO found him guilty of the prohibited act of Possession of any Narcotics, Marijuana, Drugs, Alcohol, Intoxicants, or Related Paraphernalia Not Prescribed for the Individual by the Medical Staff, an act, he claims he was not originally charged with, BOP policy as codified at 28 C.F.R § 541.8(a)(1) provides that the DHO may find that an inmate "committed the prohibited act(s) charged, and/or a similar prohibited act(s) as described in the incident report." 28 C.F.R § 541.8(a)(1). The DHO noted that all inmates are responsible for all property and contraband in their possession, dominion and that of which they exercise control. The bottle containing a substance which yielded a positive test for intoxicant, was discovered in Nobrega's locker, and as such the hearing officer will sustain the charge. After considering all the evidence, the DHO concluded that the greater weight of the evidence supported the finding of the prohibited act of Possession, rather than Making, of any Narcotics, Marijuana, Drugs, Alcohol, Intoxicants, or Related Paraphernalia Not Prescribed for the Individual by the Medical Staff. Based on the foregoing, the Court concludes that the evidence before the DHO was sufficient to support the outcome of the hearing and meets the requirements imposed by the Due Process Clause.

Finally, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541.3. Petitioner was found guilty of a 100-level, greatest severity prohibited act. Pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for 100-level offenses:

Table 1 — Prohibited Acts and Available Sanctions

Available Sanctions for Greatest Severity Level Prohibited Acts

- A. Recommend parole date rescission or retardation.

- B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

- B.1. Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

- C. Disciplinary segregation (up to 12 months).

- D. Make monetary restitution.

- E. Monetary fine.

- F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).

- G. Change housing (quarters).

  H. Remove from program and/or group activity.

  I. Loss of job.

  J. Impound inmate's personal property.

  K. Confiscate contraband.

  L. Restrict to quarters.

  M. Extra duty.

Thus, the sanctions imposed by the DHO in the present case were consistent with the severity level of the prohibited act and within the maximum available to the DHO. Accordingly, the petition will be denied. A separate Order will be issued.


Dated: January 30, 2017      /s/ William J. Nealon
                **United States District Judge**